STATE ex rel. W. O. BARNETT v. S. E. MIDGETT.

(Filed 8 September, 1909.)

1. **Clerks of Court — Election — Board of County Canvassers — Decisions—Collateral Attack.**

   The decisions or judgments of the county board of canvassers are not of such conclusiveness or finality as to exclude collateral attack, and the use of the word "judicially" in Revisal, sec. 4350, does not enlarge the meaning of sec. 2694, Code, in respect thereto.

2. **Same—Rights and Remedies—Quo Warranto.**

   The correctness of the result of the election of a clerk of the Superior Court, determined and declared by the county board of canvassers, can be investigated, passed upon and determined in a civil action in the nature of a *quo warranto*, and such is the proper remedy.

CIVIL ACTION, in the nature of *quo warranto*, brought in the name of the State, upon leave granted by the Attorney-General, upon relation of W. O. Barnett, against S. E. Midgett, to recover possession of and try the title to the office of the Clerk of the Superior Court of Dare County, tried before *Peebles, J.,* and a jury, at May Term, 1909, of the Superior Court of said county.

The relator alleged that he was duly elected Clerk of the Superior Court of Dare County at the election held on Tuesday, 3 November, 1908, having received a plurality of the votes cast at said election, there having been at said election three candidates voted for in said county for said office; that at said election in Mashoes Precinct in said county the relator received five votes

151—1

and the defendant only two votes, but that the board of county canvassers determined that the defendant received at said precinct five votes, thus making a tie vote between the relator and the defendant, which tie vote was broken by the election of the defendant by the board of elections of the county, and the defendant was declared duly elected and certificate of election issued to him, and on 7 December, 1908, he was duly inducted into said office, and the defendant has since then been in possession of the office and in receipt of its emoluments.

The record discloses the following as the only exception presented: "During the course of the trial the court stated, in response to the contention of the defendant, that it would hold that the return of the board of canvassers, together with the action of the county board of elections, was a judicial determination of the questions involved in the controversy, if the facts pleaded in the answer as to the meeting of the board and canvassing the returns were as pleaded, and could not therefore be collaterally assailed. The relator admitted that the board of county canvassers met at their regular meeting for the purpose and canvassed and determined the returns of the election, as alleged, and declared the result of the said election to have been a tie between the relator and the defendant. Said county canvassers reported said result to the county board of elections. Each board, acting separately, elected defendant clerk of said court. Thereupon the court repeated the opinion above expressed, in deference to which the relator suffered a nonsuit and appealed." In the judgment signed by his Honor it is recited that, "and the court having intimated an opinion that upon admission made by plaintiff as to action of board of county canvassers the plaintiff could not recover, the plaintiff in deference to said intimation submitted to a judgment of nonsuit and appealed to the Supreme Court."

*B. G. Crisp, D. M. Stringfield* and *Ward & Grimes* for plaintiff.

*W. M. Bond* and *Aydlett & Ehringhaus* for defendant.

MANNING, J., after stating the facts: It was contended before us that the Legislature, by section 4350, Revisal, created the board of canvassers an inferior court, whose decisons are judgments, having all the conclusiveness and finality of judgments, and protected from attack or review, except possibly by some kind of appeal, *certiorari* or some other writ, and that an action in the nature of *quo warranto,* such as this is, to try the title to the office of the clerk of the Superior Court, would not lie, because it would be a collateral attack upon the final judgment of the board of canvassers of the county. This argument was rested upon the word "judicially," used in the statute.

BANK *v.* LACY.

That this word cannot be given such meaning in this statute has been decided by this Court in *Gatling v. Boone,* 98 N. C., 573, and *Roberts v. Calvert,* 98 N. C., 583. The meaning and effect of the same word, used in the amendments to section 2694, Code 1883, subsequently adopted and embraced in section 4350, Revisal, cannot be enlarged to support the contention of the defendant or his Honor's ruling. The only amendment to section 2694, Code, is the following, viz.: "The said board shall have power and authority to judicially pass upon all facts relative to the election, and judicially determine and declare the result of the same, and they shall have power and authority to send for papers and persons and examine the same." "It is a mistaken notion that such limited exercise of judicial power is conclusive." "No such jurisdiction is conferred, and the board of canvassers is not adapted to such purpose." *Gatling v. Boone, supra.*

The extent and the effect of the determinations of the board of canvassers or other election officers have been declared in that case and other cases determined by this Court. *Roberts v. Calvert,* 98 N. C., 583; *State v. Cooper,* 101 N. C., 684; *Gatling v. Boone,* 101 N. C., 64; *Boyer v. Teague,* 106 N. C., 576; *Cozart v. Fleming,* 123 N. C., 547.

That a civil action in the nature of *quo warranto* is the appropriate remedy, and that the correctness of the result of the election declared by the board of canvassers can be investigated in such action, has also frequently been decided by this Court. *Lyon v. Commissioners,* 120 N. C., 237; *Cozart v. Fleming, supra,* and cases cited above.

Therefore the ruling of his Honor is erroneous, the judgment is reversed and the plaintiff is entitled to a new trial.

Reversed. New trial.